United States Court of Appeals,

Fifth Circuit.

No. 94-50247.

In the Matter of Hope G. CAMP, Debtor.

Wilburn C. McDANIEL, Independent Personal Representative of the Estate of Betty J. McDaniel, deceased, Appellant,

v.

Hope G. CAMP, et al., Appellees.

Aug. 2, 1995.

Appeal from the United States District Court for the Western District of Texas.

Before WISDOM, JONES and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The district court affirmed a bankruptcy court order voiding, under the Texas Constitution's provisions governing homestead rights, a pre-petition transfer of debtor Hope G. Camp's property. Betty McDaniel, claiming title to the property, appeals the district court's judgment. We reverse and remand.

I

Hope Camp was married to Betty McDaniel's father, who is now deceased. In his will, McDaniel's father bequeathed to Camp title to a house located on La Manda Street in San Antonio, Texas (the "La Manda property"). Thereafter, Camp evicted McDaniel from the La Manda property and sold it to David L. Gutierrez. At the time Camp evicted her, McDaniel had lived in the house for approximately six years.

McDaniel believed that she held superior title to the La Manda

property by virtue of a bequest from her grandmother, and sued Gutierrez in a trespass to try title action. McDaniel successfully obtained both possession of the house and a money judgment for back rent against Gutierrez, and Gutierrez filed a breach of warranty of title suit against Camp in state court.

Camp failed to file an answer in the breach of warranty suit, and the state court entered a default money judgment in Gutierrez' favor. In order to determine what properties Camp owned that could be used to satisfy his money judgment against her, Gutierrez sent post-judgment interrogatories and requests for admissions to Camp. Gutierrez asked Camp to admit that she had "abandoned any homestead claim [she] may have in and to" a house located on Linda Drive in San Antonio, Texas ("the Linda property"). At that time, Camp was living in the Linda property and had lived there for approximately twenty-three years.

When Camp failed to answer the discovery requests, the state court issued an order compelling her to answer. When Camp failed to comply with the order, Gutierrez filed a motion for sanctions against Camp. When Camp did not reply to the motion, the court issued a sanctions order (1) deeming her to have admitted that she had "abandoned any and all homestead claim she may have had" to the Linda property, (2) declaring that the Linda property was not her homestead, and (3) "prohibiting [Camp] from introducing into evidence documents or testimony to support the exempt status of

2

[the Linda] property."[1]  The court also issued a writ of execution, and the Bexar County Sheriff levied on the Linda property and noticed it for sale.  Gutierrez bought the property, and later transferred title to McDaniel to satisfy the money judgment McDaniel had earlier obtained against him.

After the sale of the Linda property, Camp filed a bankruptcy petition and claimed the Linda property as her homestead.  The bankruptcy court refused to give res judicata effect to the sanctions order that had declared that Camp had abandoned her homestead claim to the Linda property.  Instead, the court issued an order declaring that the Linda property was in fact and law Camp's homestead.  The court also voided the sheriff's sale. McDaniel filed an interlocutory appeal from the bankruptcy court's order, and the district court affirmed.  McDaniel appeals, contending that both the sanctions order and subsequent judicial sale of the Linda property were valid, and that the bankruptcy

---

[1]In pertinent part, the sanctions order stated that the Linda property and another house owned by Camp:

> are not the respondent HOPE CAMP, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF HENRY H. CAMP's homestead; and are not exempt from execution, for all of which let execution issue;  and
>
> 2. The matters contained in the Plaintiff's Request for Admissions directed to Respondent HOPE CAMP, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF HENRY H. CAMP are deemed admitted;
>
> 3. The Respondent HOPE CAMP, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF HENRY H. CAMP is shall [sic] be prevented from supporting any claim she may have or may ever have that the parcels of real property described above are or ever were exempt from execution as her homestead.

3

court should have given the sanctions order res judicata effect.

## II

McDaniel contends that the bankruptcy court improperly reached the question of the homestead character of the Linda property.[2] The district court held that "the bankruptcy court's determination that Camp satisfied her burden of establishing the initial homestead character of the [property] was not clearly erroneous" because "it was undisputed that Camp occupied the [property] continuously as her homestead for approximately 23 years." McDaniel argues that under the state court's sanctions order, Camp was prohibited from claiming the Linda property as her homestead in the bankruptcy court.

McDaniel contends that the sanctions order was a valid final judgment, and that the bankruptcy court should have given res judicata effect to the state court's decrees that the Linda property was not Camp's homestead and that Camp be prevented from "supporting" a homestead claim to the property. The district court held that "the Sanctions Order did not establish that Camp had "abandoned' her homestead claim to the [Linda property] as a matter of law,"[3] and that "post-judgment discovery is simply not capable

---

[2]We review a bankruptcy court's findings of fact for clear error; and when the district court has affirmed the findings, our review for clear error is strict. *In re Kemp,* 52 F.3d 546, 550 (5th Cir.1995). We review the bankruptcy court's conclusions of law de novo. *Id.*

[3]" "The right to a homestead in a particular tract of land, having once vested by ownership and use, is presumed to continue until there is affirmative proof of abandonment.' " *Truman v. Deason (In re Niland),* 825 F.2d 801, 808 (5th Cir.1987) (quoting *McFarland v. Rousseau,* 667 S.W.2d 929, 931 (Tex.App.—Corpus

4

of overriding the protection afforded to homestead claimants under the Texas Constitution."

A court may invoke the doctrine of res judicata to bar consideration of a claim already presented to a Texas court upon finding: "(1) that the prior judgment was rendered by a court of competent jurisdiction; (2) that there was a final judgment on the merits; (3) that the parties, or those in privity with them, are identical in both suits; and (4) that the same cause of action is involved in both suits." *Sutherland v. Cobern,* 843 S.W.2d 127, 130 (Tex.App.—Texarkana 1992, writ denied). If, however, the court that rendered the prior judgment lacked jurisdiction, the judgment is void and has no res judicata effect.[4] A party may collaterally attack a void judgment. *See Holloway v. Starnes,* 840 S.W.2d 14, 18 (Tex.App.—Dallas 1992, writ denied) ("A collateral attack is proper only if the judgment is "void in law.' "), *cert. denied,* --- U.S. ----, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993); *Dews,* 413 S.W.2d at 805

---

Christi 1984, no writ)). Under Texas law, "[a]bandonment of a homestead requires both the cessation or discontinuance of use of the property as a homestead, coupled with the intent to permanently abandon the homestead." *Womack v. Redden,* 846 S.W.2d 5, 7 (Tex.App.—Texarkana 1992, writ denied).

[4]*See Sanders v. Brady (In re Brady, Tex., Mun. Gas Corp.),* 936 F.2d 212, 218 (5th Cir.) ("Under Texas law, before the doctrine of res judicata will apply, the court rendering the prior judgment must have had jurisdiction over the dispute."), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991); *see also Poynor v. Bowie Indep. Sch. Dist.,* 627 S.W.2d 517, 519 (Tex.App.—Fort Worth 1982, writ dism'd) ("A void judgment is not *res judicata* in a subsequent suit involving the same parties and subject matter."); *Dews v. Floyd,* 413 S.W.2d 800, 805 (Tex.Civ.App.—Tyler 1967, no writ) ("Where a court rendering judgment does not have jurisdiction, the judgment is void and cannot operate as res adjudicata; it neither binds, bars, nor estops anyone." (emphasis omitted)).

5

("When the judgment is not merely erroneous, but an absolute nullity, it can have no binding force or effect, either in the tribunal in which it is rendered, or in any other in which it may be brought in question." (emphasis omitted)).[5] Under Texas law, courts have no jurisdiction where they lack 1) jurisdiction over the person of a party or the party's property, 2) jurisdiction over the subject matter, 3) jurisdiction to enter the particular judgment rendered, or 4) capacity to act as a court. *Steph v. Scott,* 840 F.2d 267, 270 (5th Cir.1988); *accord Austin Indep. Sch. Dist. v. Sierra Club,* 495 S.W.2d 878, 881 (Tex.1973); *Holloway,* 840 S.W.2d at 18 (citing *Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987)).

As a court of general jurisdiction, the trial court had subject-matter jurisdiction over Gutierrez's breach of warranty suit. *See* Tex. Const. art. 5, § 8 ("District court jurisdiction consists of exclusive, appellate and original jurisdiction of all

_____

[5]Thus, the treatment of a void judgment differs from that of a voidable judgment: "Absent one of those rare circumstances that makes the judgment "void,' the mere fact that action by a court ... is contrary to statute, constitutional provision or rule of civil or appellate procedure makes it "voidable' or erroneous." *Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990). When a judgment is merely voidable, "[t]hat the judgment may have been wrong or premised on a legal principle subsequently overruled does not affect application of *res judicata.*" *Segrest v. Segrest,* 649 S.W.2d 610, 612-13 (Tex.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983); *see also Schein v. American Restaurant Group, Inc.,* 852 S.W.2d 496, 497 n. 1 (Tex.1993) (noting that "the fact that "a judgment may have been wrong or premised on a legal principle subsequently overruled does not affect the application of res judicata.' " (quoting *Victoria County Cooperative Co. v. National Steel Prods. Co.,* 704 S.W.2d 80, 82 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.)).

actions, proceedings, and remedies...."). From this jurisdictional base, the trial court properly entered a default judgment after Camp's failure to answer. *See* Tex.R.Civ.P. 239 (governing entry of default judgments). The Texas Rules of Civil Procedure further allow a "successful party" at any time after rendition of judgment to "initiate and maintain in the trial court in the same suit in which said judgment was rendered any discovery proceeding authorized by these rules for pre-trial matters." Tex.R.Civ.P. 621a. Camp's refusal to answer post-trial discovery requests and the motion for sanctions led to the sanctions order entered by the trial court. *See* Tex.R.Civ.P. 215 (governing sanctions for abuse of discovery).

Accordingly, the trial court had general jurisdiction to sanction Camp, but that does not end our inquiry. "[W]hen the Legislature creates a right, it can also restrict the remedies available and the means of determining their enforcement." *Testoni v. Blue Cross & Blue Shield,* 861 S.W.2d 387, 390 (Tex.App.—Austin 1992, no writ) (noting, in benefits context, that trial court lacked jurisdiction to render judgment on remedy when proceedings were not in compliance with statutory restrictions). Concerning homestead rights, the courts operate under limited jurisdiction. Thus, even if a court has general jurisdiction to act, a judgment is void if the actual action taken orders a remedy not within the court's jurisdiction.[6]

---

[6]*See Crawford v. Kelly Field Nat'l Bank,* 724 S.W.2d 899, 901 (Tex.App.—San Antonio 1987, no writ) (holding that although jurisdiction to enter sanctions order existed, jurisdiction to

7

In this case, therefore, the issues require us to determine whether the state trial court sanctions order declaring the Linda property not Camp's homestead and the trial court's order of sale contravened such a jurisdictional restriction. At first blush, Rule 215 would seem to allow trial courts to enter "such orders in regard to the failure [to respond to discovery] as are just," including "an order that the matters regarding which the order was made or any other designated facts shall be taken to be established" and "an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence." Tex.R.Civ.P. 215(2)(b). However, the character of the sanctions imposed by the trial court—the declaration that the Linda property is not homestead property, not exempt from execution, and order of execution—requires us to examine the jurisdiction of the trial court over the "subject matter"—namely the homestead—given the language of the Texas Constitution. *See* Tex. Const. art. XVI, § 50 ("The homestead ... shall be, and hereby is protected from forced sale, for the payment of all debts [except those provided for in this section]."); *accord Curtis Sharp Custom Homes, Inc. v. Glover,* 701 S.W.2d 24, 25 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) ("Since the purported equitable lien was imposed by judicial

order remedy that modified judgment no longer existed because modification remedy no longer available if more than thirty days had elapsed since judgment); *cf. Downs v. City of Fort Worth,* 692 S.W.2d 209, 212 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.) (stating, in discussion of appeal time limits, that "[i]f a judgment were granted in contravention of a mandatory statutory provision it would be a void judgment.").

decree, we must examine the jurisdiction of the trial court in that case over the subject matter, to-wit: the homestead, in view of the language of the constitution.").

The Texas Supreme Court has defined "jurisdictional power" in this sense to mean "jurisdiction over the subject matter, the power to hear and determine cases of the general class to which the particular matter belongs." *Middleton v. Murff,* 689 S.W.2d 212, 213 (Tex.1985). "[T]he constitutional provision against forced sales of homesteads is of a mandatory character and it has been held with considerable unanimity that forced sales of property constituting a homestead are void and subject to collateral attack, even when the homestead character of the property is not affirmatively disclosed by the record." *Curtis Sharp Custom Homes,* 701 S.W.2d at 27. "[I]n dealing with the subject of the sale of a homestead," a court is not acting under general powers, but "is acting within a specially limited field of jurisdiction declared by the Constitution and statutes." *Cline v. Niblo,* 117 Tex. 474, 8 S.W.2d 633, 638 (1928). Consequently, if the sanctions order and order of sale constitute a "forced sale of homestead," the trial court's judgment is void. *See Niblo,* 8 S.W.2d at 638 ("A decision [under general jurisdiction] ... would be entitled to no force and effect in so far as the court in rendering it overstepped its acquired jurisdiction or its powers under the law.").

It is plausible to suggest that because the sanctions order declaring that the Linda property was not Camp's homestead does not in and of itself "force" the sale of the property, the declaration

9

cannot contravene the constitutional restriction. The sanctions order, however, operated in the nature of an equitable lien, thereby creating a cloud on Camp's title. *See Henderson v. Belknap (In re Henderson),* 18 F.3d 1305, 1310 (5th Cir.) (holding that judicial order was equitable lien and impaired exemption under federal law because created cloud on title to homestead property even though unenforceable), *cert. denied,* --- U.S. ----, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994). Moreover, because the validity of the order of sale depends on the validity of the declaration,[7] we cannot view each action in isolation. Thus, if the declaration improperly impaired a homestead right, we will not ignore "the practical real life effects of an unenforceable judicial lien on a Texas homestead." *In re Henderson,* 18 F.3d at 1310; *see also In re Niland,* 825 F.2d at 814 (denying equitable lien against homestead because otherwise would render constitutional protections "almost meaningless" (citation omitted)).

McDaniel argues that the sanctions order is valid as a proper determination of homestead. Courts of general jurisdiction do have jurisdiction to determine whether a property is a homestead,[8] and

---

[7]"[A] properly abstracted judgment never attaches to a homestead so long as it remains homestead property." *In re Henderson,* 18 F.3d at 1308. Thus, if the Linda property is Camp's homestead, the order of sale cannot attach. If the declaration is valid, however, the Linda property is no longer Camp's homestead. Consequently, the order of sale would not be acting upon a homestead and would not contravene the constitutional prohibition. However, the overall effect, if the property is indeed Camp's homestead, would be a sale of homestead property.

[8]*See Pace v. McEwen,* 617 S.W.2d 816, 819 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) (holding that

10

once such a determination is made, res judicata can apply. *See Mosley v. Ticor Title Ins. Co.,* 875 S.W.2d 10, 11 (Tex.App.—Eastland 1994, writ denied) (noting that res judicata applies to homestead dispute only if prior court had subject matter jurisdiction through a proper adjudication and upholding prior judgment because it was in compliance with constitutional protections).[9] There exists a distinction, however, between the determination of whether an existing, proper lien was correctly applied and the imposition of a new lien without a prior determination of its propriety. *See Mosley,* 875 S.W.2d at 11 (noting distinction between "the adjudication of an existing lien and the imposition by the court of a previously non-existing lien"). In the former situation, the prior court exercises its jurisdiction to determine whether a property was a homestead, and then if, and only if, the property is not a homestead, the court imposes the lien. In the latter situation, the court imposes the lien without conducting the required homestead determination;  it is this lien that the constitutional provision prohibits. Accordingly, res judicata can apply only if the trial court actually and properly determined the homestead question prior to

---

trial court had jurisdiction "to determine that the property in question was not [claimant's] homestead").

[9]*Cf. Johnson v. Whatley,* 45 S.W.2d 766, 768 (Tex.Civ.App.—Galveston 1932, writ ref'd) (refusing to allow party to retry homestead issue because prior court had conducted full trial of that issue);  *Tuerpe v. George W. Saunders Live Stock Commission Co.,* 259 S.W. 649, 650-51 (Tex.Civ.App.—San Antonio 1924, writ dism'd w.o.j.) (same).

issuing the order of sale.[10]

McDaniel argues that by failing to answer, Camp waived her right to contest the propriety of the trial court's homestead determination at a later date and to prove that jurisdiction was lacking. Although parties must plead jurisdiction, waiver can apply. *See* Tex.R.Civ.P. 90. (governing waiver of pleading jurisdiction). This waiver, however, applies only to the pleading of jurisdictional facts, not to their existence. *See Trevino v. Allstate Ins. Co.,* 651 S.W.2d 8, 12 (Tex.App.—Dallas 1983, writ ref'd n.r.e.) ("[W]aiver of pleading of a fact does not constitute waiver of proof of that fact."); *Northrup v. O'Brien,* 474 S.W.2d 614, 617 (Tex.Civ.App.—Dallas 1971, no writ) (stating that waiver "does not dispense with proof of essential jurisdictional facts"). "An omission of, or defect in, the jurisdictional allegations will be waived if the defendant fails to call it to the court's attention before judgment, provided that the proof upon the trial establishes the court's jurisdiction." *Mercer v. Phillips Natural*

---

[10]*See Curtis Sharp Custom Homes,* 701 S.W.2d at 27 ("[T]he former judgment [ordering sale] can stand only when the record discloses that the issue of whether homestead exists has been determined adversely to the one claiming the homestead exemption...."); *Tucker v. Cole,* 215 S.W.2d 252, 255 (Tex.Civ.App.—Texarkana 1948, writ ref'd n.r.e.) (requiring "an affirmative showing in the decree that the question was adjudicated in the judgment leading up to the sale"); *Johnson v. Echols,* 21 S.W.2d 382, 383 (Tex.Civ.App.—Eastland 1929, writ ref'd) ("[A] judgment foreclosing an attachment lien on land is not conclusive of the defendant's homestead rights in the attached lands where no issue regarding such homestead rights has been made by the pleadings of either party."); *Tobar v. Losano,* 25 S.W. 973, 974 (Tex.Civ.App.1894, no writ) ("It is well settled that the foreclosure of an attachment does not adjudicate the homestead right, unless that issue is raised in the suit in connection with which the attachment is foreclosed.").

12

*Gas Co.,* 746 S.W.2d 933, 939 (Tex.App.—Austin 1988, writ denied). Accordingly, a party's waiver is not effective if the underlying facts of jurisdiction are absent. *See Mercer,* 746 S.W.2d at 939 (looking to whether jurisdictional facts existed, not merely whether they were pled); *Poynor,* 627 S.W.2d at 519 (noting that parties cannot waive subject matter jurisdictional defects). If, therefore, the proceedings resulting in the sanctions order did not raise the issue of whether the property was Camp's homestead, the sanctions order was not a determination of homestead and the trial court would have had no jurisdiction to issue the order of sale.

In the request for admissions, Gutierrez asked Camp to admit whether she had abandoned any homestead claim in the Linda property. "When homestead rights are once shown to exist in property, they are presumed to continue, and anyone asserting an abandonment has the burden of pleading and proving it by competent evidence." *Norman v. First Bank & Trust,* 557 S.W.2d 797, 801 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). Abandonment is a question of fact. *See Coleman v. Banks,* 349 S.W.2d 737, 741 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.) ("[A]bandonment of a homestead is a question of fact to be determined in each case from the entire evidence before the court or jury....").

A party may attempt to satisfy its burden to prove factual issues by requesting an admission from the opposing party. *See* Tex.R.Civ.P. 169(2) ("Any matter admitted under this rule is conclusively established as to the party making the

13

admission...."). If the opponent fails to answer the request, the factual issue is deemed admitted. *See Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989) ("An admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it.").[11] Should the deemed admissions supply the necessary elements of the requesting party's proof, a court may enter judgment on the requesting party's cause of action.[12] Consequently, resolution of a question solely on

---

[11]*See also Ramsey v. Criswell,* 850 S.W.2d 258, 259 (Tex.App.—Texarkana 1993, no writ) ("[W]hen timely response is not made to a request for admissions, the matter is admitted without the necessity of a court order."); *Texas Employers' Ins. Ass'n v. Bragg,* 670 S.W.2d 712, 715-16 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (noting that questions were deemed admitted with or without a court order if no answer to request for admissions); *Frierson v. Modern Mut. Health & Acc. Ins. Co.,* 172 S.W.2d 389, 393 (Tex.Civ.App.—Waco 1943, ref'd w.o.m.) ("[T]he effect of a party's failure to answer inquiries in adverse party's written request for admission ... is comparable to a "legal admission' made in the applicable pleadings of a party, so as to preclude his denial of such facts on the trial of the case.").

[12]*See Ramsey,* 850 S.W.2d at 260 (holding that when party's deemed admissions supplied all elements necessary to support judgment, judgment was proper); *Agristor Credit Corp. v. Donahoe,* 568 S.W.2d 422, 427 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.) (holding that when deemed admissions established all elements of claim, claim had been established as a matter of law); *Frierson,* 172 S.W.2d at 393 (holding that because admitted facts "established in favor of [requesting party] every fact tendered by its pleadings, ... it was the duty of the trial judge to apply the law to the facts so established and render judgment accordingly"); *see also Parras v. McLelland,* 846 S.W.2d 44, 46 (Tex.App.—Corpus Christi 1992, writ denied) ("[T]he legal effect of a party's failure to answer inquiries in its written request for admissions ... is to present the case to the trial court on the agreed statement of facts ... [and] it is the trial judge's duty to apply the law to the facts so established and render judgment accordingly.").

14

deemed admissions constitutes adjudication of that question.[13]
Allowing Camp to challenge that adjudication in the bankruptcy
court would eviscerate the protections Texas law provides to a
party who properly obtains and relies on judicial admissions.[14]

Camp essentially contends that because the Texas courts
liberally construe the constitutional restriction against forced
homestead sales,[15] we should make an exception and disregard the
ordinary legal effect of her admissions. We decline. The Texas

---

[13]We have held in other circumstances that under Texas law,
a discovery sanction operates as a determination on the merits.
*See Besing v. Hawthorne (In re Besing), 981 F.2d 1488, 1493-94
(5th Cir.1993) (stating that discovery sanction—dismissal with
prejudice—operated as a determination on the merits under Texas
law (citing *Mossler v. Shields,* 818 S.W.2d 752, 754 (Tex.1991);
*Logan,* 736 S.W.2d at 931); *Dillard v. Security Pacific Brokers,
Inc.,* 835 F.2d 607, 608 (5th Cir.1988) (holding that dismissal as
sanction for discovery abuse qualified as judgment on merits).

> The Texas courts have acted similarly. *See, e.g.,
> Greater Houston Transp. Co. v. Wilson,* 725 S.W.2d 427, 430
> (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.)
> (giving res judicata effect to default judgment entered as
> sanction for discovery abuse); *Tucker v. Cole,* 215 S.W.2d
> at 254-56 (holding that settlement decrees constituted full
> adjudication of homestead question).

[14]*See Logan v. First Bank,* 736 S.W.2d 927, 930
(Tex.App.—Beaumont 1987, writ ref'd n.r.e.) ("[S]anctions ...
serve to deter violations of the discovery rules."); *id.* at 931
("We believe that the sanctions imposed by the trial court would
be meaningless if the [sanctioned party] were allowed to raise
the same matters again in this case.").

[15]*See Simank v. Alford,* 441 S.W.2d 234, 237
(Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.) (stating "generally
accepted rule that homestead laws are to be liberally construed
to effectuate their beneficent purpose"); *Gann v. Montgomery,*
210 S.W.2d 255, 258 (Tex.Civ.App.—Fort Worth 1948, writ ref'd
n.r.e.) ("The courts have always given a liberal construction to
the Constitution and Statutes to protect the homestead rights.
However, the courts cannot protect that which is not
homestead.").

15

courts explicitly have given admissions their ordinary legal effect in the homestead context, both to award and to deny a finding of homestead.[16]  Camp's admission that she had abandoned her homestead interest in the Linda property thus established the factual basis for the trial court's determination that the Linda property was not her homestead.  Consequently, the constitutional homestead provisions no longer applied, and the trial court had jurisdiction to impose execution on the Linda property.

Because the sanctions order and order of sale complied with the first *Sutherland* requirement of jurisdiction, we turn to the remaining elements—finality, identity of parties, and identity of cause of action.  The parties[17] and the issues are identical; therefore, the remaining question is whether the sanctions order and order of sale constituted a final judgment.  "A post-judgment order disposing of all matters placed before the trial court in the

---

[16]*See, e.g., Steenland v. Texas Commerce Bank Nat'l Ass'n,* 648 S.W.2d 387, 390 (Tex.App.—Tyler 1983, writ ref'd n.r.e.) (allowing additional proof of homestead only because admissions did not preclude facts necessary to determine homestead issue); *Cox v. Messer,* 469 S.W.2d 611, 614 (Tex.Civ.App.—Tyler 1971, no writ) (using admissions to establish homestead facts);  *Alexander v. Alexander,* 373 S.W.2d 800, 805 (Tex.Civ.App.—Corpus Christi 1963, no writ) (finding conclusive judicial admission that conceded homestead right to another party);  *Summers v. Butler,* 284 S.W.2d 954, 956 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.) (holding that once admissions established that property was homestead, "the fact issue as to whether the [property] was homestead went out of the case").

[17]After Gutierrez prevailed in the breach of warranty action against Camp, he assigned his interest in the property to McDaniel to satisfy a judgment McDaniel had against him. Accordingly, both the state court action and the bankruptcy proceeding share the same parties in interest.  Indeed, Camp does not challenge this point.

post-judgment motion is a final and appealable order." *Wolma v. Gonzalez,* 822 S.W.2d 302, 304 (Tex.App.—San Antonio 1991, no writ) (citing *Allen v. Allen,* 717 S.W.2d 311 (Tex.1986)); *see also Collier Servs. Corp. v. Salinas,* 812 S.W.2d 372, 374 (Tex.App.—Corpus Christi 1991, no writ) (stating that postjudgment discovery order was final and appealable if it "finally disposed of the newly asserted claims"); *Transceiver v. Ring Around Prods.,* 581 S.W.2d 712, 712 (Tex.Civ.App.—Dallas 1979, no writ) (holding that postjudgment order was final and appealable because disposed of all issues); *cf. Arndt v. Farris,* 633 S.W.2d 497, 500 n. 5 (Tex.1982) ("Trial court orders granting or denying particular postjudgment discovery requests are not appealable until a final judgment is rendered disposing of all issues between the parties."). The sanctions order and order of sale disposed of all questions raised by Gutierrez, that is, whether he could levy on the Linda property to satisfy the judgment on his breach of warranty claim. Accordingly, the orders are final.[18]

We therefore hold that the sanctions order and order of sale constituted a valid judgment under Texas law that complied with all the requirements for application of res judicata. A Texas court would therefore have barred Camp from raising the homestead claim in subsequent actions. Accordingly, the bankruptcy court should have acted likewise and have given the sanctions order and order of

---

[18]The orders are also final for the purposes of collateral attack because Camp did not appeal them. *See Curtis Sharp Custom Homes, Inc.,* 701 S.W.2d at 24 (stating that prior judgment was final because no appeal was taken from it).

sale res judicata effect. *See In re Besing,* 981 F.2d at 1494 ("[F]ederal courts must give the Texas judgment the same preclusive effect it would have had in a Texas court.").

III

For the foregoing reasons, we REVERSE the judgment of the district court, and we REMAND to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.